Jennine DiSomma, Esq.
DanaLynn T. Colao, Esq.
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
Attorneys for Plaintiff
Kim C. Townsend

|  |  |
|---|---|
| KIM C. TOWNSEND,<br><br>                          Plaintiff,<br><br>          v.<br><br>PINNACLE ENTERTAINMENT, INC.,<br><br>                          Defendant. | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>Civil Action No. 10-6522 (RMB) (AMD)<br><br>Civil Action<br><br>**AMENDED COMPLAINT** |

Plaintiff Kim C. Townsend ("Townsend" or "Plaintiff"), by way of Complaint against defendant Pinnacle Entertainment, Inc. ("Pinnacle" or "Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1.      This action arises from Pinnacle's breach of an employment agreement between Townsend and Pinnacle ("the Agreement").

2.      Plaintiff seeks compensatory damages based on the amounts due to her under the terms of the Agreement, together with interest, costs of suit, attorney's fees and expenses and all other costs that Plaintiff incurred or will incur as a direct or indirect result of Pinnacle's breach of the Agreement.

## PARTIES

3.      Plaintiff is an individual residing at 531 Glenn Avenue, Egg Harbor Township, New Jersey 08234-6103.

{00650757.DOC}

4.      Pinnacle is a Delaware corporation authorized to do business within the State of New Jersey with a principal place of business at 125 South Martin Luther King Boulevard, Atlantic City, New Jersey.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment with Pinnacle

5.      Plaintiff was employed by Pinnacle from April 2002 through November 19, 2009 when she was unlawfully terminated without cause.

6.      Plaintiff has over 25 years experience and is well respected in the casino industry.

7.      Plaintiff was initially employed by Pinnacle as Vice President of Marketing in the Company's corporate headquarters in Las Vegas, Nevada.  As a direct result of her hard work and outstanding performance, Pinnacle promoted Plaintiff (less than one year later) to Senior Vice President of Marketing.

8.      In October 2006, Plaintiff was promoted to Executive Vice President and then in September 2007 to Chief Executive Officer in Atlantic City, New Jersey.  In this position, Plaintiff was responsible for operations, development and oversight of the Atlantic City Project including demolition, environmental, acquisition and development.

9.      Throughout her career at Pinnacle, Plaintiff repeatedly received high praise for her success and dedication to the Company by way of her promotions and statements made by Pinnacle in various press releases.

### Plaintiff's Promotions

10.     In February 2009, Plaintiff was given the role as Project Manager for River City, a new casino that was being built by Pinnacle in St. Louis, Missouri.

11.     On or about October 15, 2009, Pinnacle issued a Press Release announcing Plaintiff's promotion and new position of General Manager of Lumiere Place, a casino property located in St. Louis, Missouri.  In addition to her new General Manager position of Lumiere Place, Plaintiff continued to fulfill her role and responsibilities as the Chief Executive Officer for the Atlantic City project.

12.     Thereafter, with the assistance of Pinnacle, Plaintiff began planning for her move from Atlantic City, New Jersey to St. Louis, Missouri

**Employment Agreements with Pinnacle**

13.     From the time she was hired, Plaintiff's employment with Pinnacle was always subject to an Employment Agreement.

14.     Plaintiff executed a two-year Employment Agreement with Pinnacle on April 2, 2007 (the "Agreement").

15.     Two weeks prior to the expiration of the Agreement, on April 2, 2009, Pinnacle presented plaintiff with another two-year Employment Agreement for her to review with her attorney (the "Renewed Employment Agreement").

16.     In September 2009, the terms of the Renewed Employment Agreement were negotiated and agreed upon by Plaintiff and Pinnacle.

17.     Thereafter, Pinnacle's officers and senior executives confirmed that the terms of the Renewed Employment Agreement were agreed upon and it would be presented to Plaintiff for her execution.

18.     Both Pinnacle's and Plaintiff's actions during the relevant time period (April 2009 through November 19, 2009) clearly demonstrate that there was a meeting of the minds and that the Renewed Employment Agreement was indeed in place:  Plaintiff continued to

be employed, Plaintiff was compensated at the rate established by the Renewed Employment Agreement; and Plaintiff performed the responsibilities for the position outlined in the Renewed Employment Agreement.

**Change in Pinnacle's Executive Management Team**

19.     Even after Dan Lee, the then Chief Executive Officer of Pinnacle, was replaced by John Giovenco as interim Chief Executive Officer, in early November, Plaintiff was told her new position as General Manager of Lumiere Place was secure and she should continue to plan her relocation to St. Louis.

20.     Relying on Pinnacle's representations and conduct, Plaintiff prepared to relocate her life to St. Louis and utilized the services of a realtor to locate an apartment to rent in St. Louis.

21.     In November 2009, Pinnacle provided Plaintiff with a substantial allowance to cover all the costs and expenses associated with her move to St. Louis, Missouri. Pinnacle also retained the services of a moving company and spoke with the realtor to execute the lease for the apartment in St. Louis that Pinnacle agreed to rent and pay for on Plaintiff's behalf.

**Plaintiff's Termination**

22.     On November 16, 2009, Plaintiff traveled to Las Vegas to participate in various senior management meetings and to discuss her transition from being Project Manager of River City to General Manager of Lumiere Place with Alain Uboldi, Chief Operating Officer of Pinnacle.

23.     On November 17, 2009, Pinnacle's General Managers, including Plaintiff, were required to attend a meeting to discuss the current operating performance of their respective

Pinnacle casino properties for which they were responsible, as well as the 2010 forecast budgets for each property (the "Meeting").  There were approximately 25 individuals that attended the Meeting, including John Giovenco, the General Counsel, the Board of Directors as well as other Pinnacle executives and officers.  Plaintiff was the only woman at the Meeting and most of the men were under 45 years of age.

24.    During the Meeting, Mr. Giovenco interrupted Plaintiff's presentation on the performance of the River City, Lumiere Place and the Atlantic City properties and asked her if she had ever served as a General Manager of a casino property.  Plaintiff was humiliated and embarrassed that she was required to defend her credentials in a room of her peers, Pinnacle's Board of Directors and other executives and officers.  No one else at the Meeting was asked these types of questions during their presentations -- despite the fact that many of the other male attendees had much less experience than Plaintiff.

25.    On November 19, 2009 -- just three days before Plaintiff was scheduled to move to St. Louis -- Plaintiff was shocked to be told that her employment with Pinnacle was being terminated.

26.    At that time, Plaintiff was told she was "not qualified" for the General Manager's position at Lumiere Place -- despite the fact that Pinnacle's Board of Directors approved her promotion to this very position just six weeks earlier.

27.    When Plaintiff asked if she could be transferred to work in Pinnacle's corporate headquarters and fill the vacant Senior Vice President of Marketing position -- which she previously held for over four years before being promoted to Executive Vice President/Atlantic City -- Plaintiff was told that she was "not qualified" for this position or any other position with the Company.

28.     Plaintiff was subsequently presented with a Severance Agreement and General Release ("Severance Agreement").  The Severance Agreement failed to provide Plaintiff with the monetary compensation and benefits to which she was entitled under the Renewed Employment Agreement and/or the Agreement.

29.     Without any basis, Pinnacle denied Plaintiff's repeated requests that it provide her with the compensation and severance benefits to which Pinnacle is contractually obligated to pay her under the Renewed Employment Agreement and/or the Agreement.

30.     When Plaintiff advised Pinnacle that she intended to pursue her legal remedies if they did not fulfill their contractual obligations and compensate her for wrongful termination based on her sex and age, it retaliated against Plaintiff and demanded that she leave work three weeks prior to the agreed upon date of separation.

### FIRST COUNT
**(Breach of Contract)**
**(April 2, 2007 Agreement)**

31.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30 of the Complaint as if fully set forth herein.

32.     At all relevant times, Plaintiff continued to be employed and continued to fulfill her responsibilities as the Chief Executive Officer of Pinnacle's Atlantic City location, the Project Manager for River City and the General Manager for Lumiere Place.

33.     Under such circumstances, Plaintiff's April 2, 2007 Agreement renewed automatically under the same terms and conditions until Pinnacle terminated Plaintiff's employment on March 31, 2010.

34.     After Plaintiff was notified that her employment would be terminated, Pinnacle failed and refused to provide Plaintiff with the severance package and other benefits that she is entitled to receive under the Agreement.

35.     Pinnacle's failure to provide Plaintiff with the severance package and other benefits to which she is entitled constitutes a breach of the Agreement with Pinnacle.

36.     As a direct and proximate result of Pinnacle's breach of its obligations under the Agreement, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

<u>**SECOND COUNT**</u>
**(Breach of Contract)**
**(Renewed Employment Agreement)**

37.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38.     In September 2009, the terms of the Renewed Employment Agreement were negotiated and agreed upon by Plaintiff and Pinnacle.

39.     Thereafter, Pinnacle's officers and senior executives represented that the Renewed Employment Agreement would be provided to Plaintiff for execution.

40.     Both Pinnacle's and Plaintiff's actions during the relevant time period clearly demonstrate that there was a meeting of the minds and that the Renewed Employment Agreement was indeed in place.

41.     After Plaintiff was notified that her employment would be terminated, Pinnacle failed and refused to provide Plaintiff with the severance package and other benefits that she is entitled to receive under the Renewed Employment Agreement.

42.    Pinnacle's failure to provide Plaintiff with the severance package and other benefits to which she is contractually entitled constitutes a breach of the Renewed Employment Agreement.

43.    As a direct and proximate result of Pinnacle's breach of its obligations under the Renewed Employment Agreement, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

## THIRD COUNT
### (Bad Faith Discharge Tort)

44.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 43 of the Complaint as if fully set forth herein.

45.    Plaintiff's eight years of employment with Pinnacle was always subject to an employment contract.

46.    Plaintiff had established contractual rights of continued employment with Pinnacle.

47.    Throughout her eight-year tenure with Pinnacle, Plaintiff received high praise for her work at Pinnacle from numerous senior executives, including, but not limited to the Chief Executive Officer and the Chairman of Pinnacle's Board of Directors.

48.    During her employment with Pinnacle, Plaintiff developed a relationship of trust, reliance and dependency with Pinnacle, its executive management team and Pinnacle's Board of Directors.

49.     At all relevant times, Plaintiff continued to be employed and continued to fulfill her responsibilities as the Chief Executive Officer of Pinnacle's Atlantic City location, the Project Manager for River City and the General Manager for Lumiere Place.

50.     In November 2009, Pinnacle repeatedly represented that Plaintiff's new position as General Manager of Lumiere Place was secure despite the replacement of the Chief Executive Officer with an interim CEO.

51.     Days before Pinnacle notified Plaintiff of her unlawful termination, Pinnacle retained the services of a moving company to relocate Plaintiff from Atlantic City, New Jersey to St. Louis, Missouri for her continued position of General Manager of Lumiere Place.

52.     Plaintiff relied on Pinnacle's representations regarding their intention to continue to employ her to utilize her experience and skills to help the Company succeed.

53.     Plaintiff trusted and relied on Pinnacle to fulfill its contractual obligations and representations that her position as the General Manager of Lumiere Place was secure.

54.     Under these circumstances, Pinnacle acted in bad faith when it terminated Plaintiff's employment without cause.

55.     At no time prior to her termination did Pinnacle provide Plaintiff with any notice that her continued employment was in jeopardy.

56.     As a direct and proximate result of Pinnacle's actions, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

## FOURTH COUNT
### (Breach of the Covenant of Good Faith and Fair Dealing)

57.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 56 of the Complaint as if fully set forth herein.

58.     Plaintiff's eight years of employment with Pinnacle was always subject to an employment contract.

59.     Plaintiff had established contractual rights of continued employment with Pinnacle.

60.     Throughout her eight-year tenure with Pinnacle, Plaintiff received high praise for her work at Pinnacle from numerous senior executives, including, but not limited to the Chief Executive Officer and the Chairman of Pinnacle's Board of Directors.

61.     During her employment with Pinnacle, Plaintiff developed a relationship of trust, reliance and dependency with Pinnacle, its executive management team and Pinnacle's Board of Directors.

62.     At all relevant times, Plaintiff continued to be employed and continued to fulfill her responsibilities as the Chief Executive Officer of Pinnacle's Atlantic City location, the Project Manager for River City and the General Manager for Lumiere Place.

63.     In November 2009, Pinnacle repeatedly represented that Plaintiff's new position as General Manager of Lumiere Place was secure despite the replacement of the Chief Executive Officer with an interim CEO.

64.     Days before Pinnacle notified Plaintiff of her unlawful termination, Pinnacle retained the services of a moving company to relocate Plaintiff from Atlantic City, New Jersey to St. Louis, Missouri for her continued position of General Manager of Lumiere Place.

65.     Plaintiff relied on Pinnacle's representations regarding their intention to continue to employ her to use her experience and skills to help the Company succeed.

66.     Plaintiff trusted and relied on Pinnacle to fulfill its contractual obligations and representations that her position as the General Manager of Lumiere Place was secure.

67.     Under these circumstances, Pinnacle acted in bad faith when it terminated Plaintiff's employment without cause.

68.     At no time prior to her termination did Pinnacle provide Plaintiff with any notice that her continued employment was in jeopardy.

69.     Under these circumstances, and in accordance with the parties' dealings and understanding, Pinnacle owed Plaintiff a duty of good faith and fair dealing.

70.     Pinnacle breached that duty when it terminated Plaintiff's employment without cause.

71.     As a direct and proximate result of Pinnacle's breach, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

### FIFTH COUNT
**(Intentional Infliction of Emotional Distress)**

72.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73.     Pinnacle terminated Plaintiff's employment without cause after repeatedly representing to Plaintiff that her position was secure.

74.     Pinnacle humiliated and embarrassed Plaintiff by questioning her qualifications in a room of 25 of her peers, including Pinnacle's executive management team and Pinnacle's Board of Directors.

75.     Without any basis, Pinnacle told Plaintiff she was not qualified for any position at the Company.

76.     Pinnacle made such false statements and terminated Plaintiff's employment with complete disregard or appreciation of her eight years of dedicated service to the Company and the emotional impact such improper conduct would have on Plaintiff.

77.     Pinnacle's conduct towards Plaintiff was extreme and outrageous.

78.     Pinnacle either intended to cause, or had reckless disregard for causing, emotional distress to Plaintiff.

79.     As a direct and proximate result of Pinnacle's actions, Plaintiff has suffered severe and extreme emotional distress.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

## SIXTH COUNT
### (Negligent Infliction of Emotional Distress)

80.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 79 of the Complaint as if fully set forth herein.

81.     Pinnacle terminated Plaintiff's employment without cause after repeatedly representing to Plaintiff that her position was secure.

82.     Pinnacle humiliated and embarrassed Plaintiff by questioning her qualifications in a room of 25 of her peers, including Pinnacle's executive management team and Pinnacle's Board of Directors.

83.     Without any basis, Pinnacle told Plaintiff she was not qualified for any position at the Company.

84.     Pinnacle made such false statements and terminated Plaintiff's employment with complete disregard or appreciation of her eight years of dedicated service to the Company and the emotional impact such improper conduct would have on Plaintiff.

85.     Pinnacle's conduct towards Plaintiff was extreme and outrageous.

86.     Pinnacle either intended to cause, or had reckless disregard for causing, emotional distress to Plaintiff.

87.     Pinnacle negligently caused, or had reckless disregard for causing, emotional distress to Plaintiff.

88.     As a direct and proximate result of Pinnacle's actions, Plaintiff has suffered severe and extreme emotional distress.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

## SEVENTH COUNT
### (Promissory Estoppel)

89.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90.     In February 2009, Plaintiff was provided with additional responsibilities when she was assigned as Project Manager of River City, a new casino being built by Pinnacle in St. Louis, Missouri.

91.     In March 2009, Pinnacle provided Plaintiff with a Renewed Employment Agreement to review with her attorney.

92.     The Renewed Employment Agreement was for an additional two years of employment with Pinnacle.

93.     In the months that followed, Plaintiff and her attorney negotiated with Pinnacle regarding the terms of the Renewed Employment Agreement.

94.     By September 2009, Plaintiff and Pinnacle agreed upon all the material terms and conditions of the Renewed Employment Agreement.

95.     Pinnacle repeatedly represented to Plaintiff (and her attorney) that the Renewed Employment Agreement agreed to by the parties would be provided to her for execution.

96.     Pinnacle also made repeated representations to Plaintiff in or about November 2009 that her new position as General Manager of Lumiere Place in St. Louis was secure.

97.     At all relevant times, Plaintiff continued to be employed and fulfilled her responsibilities as the Chief Executive Officer of Pinnacle's Atlantic City location, the Project Manager for River City and the General Manager for Lumiere Place.

98.     In November 2009, Plaintiff was informed that she would be provided with the Renewed Employment Agreement to execute when she was in Las Vegas for corporate manager meetings.

99.     Days before notifying Plaintiff of her unlawful termination, Pinnacle retained the services of a moving company to relocate Plaintiff from Atlantic City, New Jersey to St. Louis, Missouri and communicated with a realtor to secure a home for Plaintiff in St. Louis.

100.    Pinnacle engaged in conduct and made representations to Plaintiff regarding her continued employment with the Company knowing and intending Plaintiff to rely on such representations.

101.    Plaintiff reasonably relied on the promises and representations made by Pinnacle regarding her continued employment with the Company and her position as General Manager for Lumiere Place.

102.    Based on her reasonable reliance on the promises and representations made by Pinnacle regarding Plaintiff's continued employment, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

## EIGHTH COUNT
### (Intentional Misrepresentations)

103.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 102 of the Complaint as if fully set forth herein.

104.    In February 2009, Plaintiff was provided with additional responsibilities when she was assigned as Project Manager of River City, a new casino being built by Pinnacle in St. Louis, Missouri.

105.    In March 2009, Pinnacle provided Plaintiff with a Renewed Employment Agreement to review with her attorney.

106.    The Renewed Employment Agreement was for an additional two years of employment with Pinnacle.

107.    In the months that followed, Plaintiff and her attorney negotiated with Pinnacle regarding the terms of the Renewed Employment Agreement.

108.    By September 2009, Plaintiff and Pinnacle agreed upon all the material terms and conditions of the Renewed Employment Agreement.

109.    Pinnacle repeatedly represented to Plaintiff (and her attorney) that the Renewed Employment Agreement agreed to by the parties would be provided to her for execution.

110.    Pinnacle also made repeated representations to Plaintiff in or about November 2009 that her new position as General Manager of Lumiere Place in St. Louis was secure.

111.    At all relevant times, Plaintiff continued to be employed and fulfilled her responsibilities as the Chief Executive Officer of Pinnacle's Atlantic City location, the Project Manager for River City and the General Manager for Lumiere Place.

112.    In November 2009, Plaintiff was informed that she would be provided with the Renewed Employment Agreement to execute when she was in Las Vegas for corporate manager meetings.

113.    Days before notifying Plaintiff of her unlawful termination, Pinnacle retained the services of a moving company to relocate Plaintiff from Atlantic City, New Jersey to St. Louis, Missouri and communicated with a realtor to secure a home for Plaintiff in St. Louis.

114.    Pinnacle engaged in conduct and made representations to Plaintiff regarding her continued employment with the Company knowing and intending Plaintiff to rely on such representations.

115.    Through its actions, Pinnacle intentionally misrepresented to Plaintiff that her employment and new position with Pinnacle were secure.

116.    Pinnacle's representations to Plaintiff regarding her continued employment were false and misleading.

117.    Plaintiff reasonably relied on Pinnacles intentional misrepresentations to her detriment.

118.    As a direct and proximate result of Pinnacle's false and misleading representations, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

## NINTH COUNT
### (Negligent Misrepresentations)

119.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 118 of the Complaint as if fully set forth herein.

120.    In February 2009, Plaintiff was provided with additional responsibilities when she was assigned as Project Manager of River City, a new casino being built by Pinnacle in St. Louis, Missouri.

121.    In March 2009, Pinnacle provided Plaintiff with a Renewed Employment Agreement to review with her attorney.

122.     The Renewed Employment Agreement was for an additional two years of employment with Pinnacle.

123.     In the months that followed, Plaintiff and her attorney negotiated with Pinnacle regarding the terms of the Renewed Employment Agreement.

124.     By September 2009, Plaintiff and Pinnacle agreed upon all the material terms and conditions of the Renewed Employment Agreement.

125.     Pinnacle repeatedly represented to Plaintiff (and her attorney) that a final version of the Renewed Employment Agreement would be provided to her for execution.

126.     Pinnacle also made repeated representations to Plaintiff in or about November 2009 that her new position as General Manager of Lumiere Place in St. Louis was secure.

127.     At all relevant times, Plaintiff continued to be employed and fulfilled her responsibilities as the Chief Executive Officer of Pinnacle's Atlantic City location, the Project Manager for River City and the General Manager for Lumiere Place.

128.     In November 2009, Plaintiff was informed that she would be provided with the Renewed Employment Agreement to execute when she was in Las Vegas for corporate manager meetings.

129.     Days before notifying Plaintiff of her unlawful termination, Pinnacle retained the services of a moving company to relocate Plaintiff from Atlantic City, New Jersey to St. Louis, Missouri and communicated with a realtor to secure a home for Plaintiff in St. Louis.

130.     Pinnacle engaged in conduct and made representations to Plaintiff regarding her continued employment with the Company knowing and intending Plaintiff to rely on such representations.

131.    Through its actions, Pinnacle negligently misrepresented to Plaintiff that her employment and new position with Pinnacle were secure.

132.    Pinnacle's representations to Plaintiff regarding her continued employment were false and misleading.

133.    Plaintiff reasonably relied on Pinnacle's negligent misrepresentations to her detriment.

134.    As a direct and proximate result of Pinnacle's false and misleading representations, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff hereby demands judgment in her favor and against Pinnacle for compensatory damages, consequential damages, and punitive damages, together with interest, costs of suit, attorney's fees and expenses and such other and further relief as this Court deems equitable and just.

## TENTH COUNT
### (Declaratory Judgment)

135.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 134 of the Complaint as if fully set forth herein.

136.    Plaintiff's employment with Defendant was subject to the terms of either the Agreement or the Renewed Agreement.

137.    Plaintiff is informed and believes Defendant has refused and/or failed to acknowledge that either the Agreement or the Renewed Agreement was in effect at the time Plaintiff's employment was terminated.

138.    By reason of the foregoing, there now exists a definite, real, substantiated and justifiable controversy between Plaintiff and Defendant regarding whether the Agreement or Renewed Agreement was in effect at the time Plaintiff's employment was terminated, which is

of sufficient immediacy to warrant the issuance of a Declaratory Judgment pursuant to 28 U.S.C. § 2201.

139.    Plaintiff seeks a declaration that the Renewed Agreement was in effect at the time Defendant terminated her employment and the parties are subject to all the provisions of the Renewed Agreement.

140.    In the alternative, Plaintiff seeks a declaration that the Agreement was in effect at the time Defendant terminated her employment and the parties are subject to all the provisions of the Agreement.

**WHEREFORE** plaintiff hereby demands judgment in her favor and against Pinnacle for an Order (i) declaring that the Renewed Agreement was in effect at the time Pinnacle terminated her employment, (ii) in the alternative declaring that the Agreement was in effect at the time Pinnacle terminated her employment, (iii) awarding her costs, counsel fees and other relief as this Court deems just and equitable.

**SAIBER LLC**
Attorneys for Plaintiff
Kim C. Townsend


By:      /s/ DanaLynn T. Colao
         JENNINE DISOMMA
         DANALYNN T. COLAO
         18 Columbia Turnpike, Suite 200
         Florham Park, New Jersey 07932
         (973) 622-3333

Dated:  January 31, 2011

<u>**CERTIFICATION PURSUANT TO R. 4:5-1**</u>

  **I HEREBY CERTIFY** that the matter in controversy is not, to the best of my knowledge, the subject of any other action pending in any court or of a pending arbitration proceeding, with the exception of a charge for discrimination and retaliation filed by Plaintiff against Pinnacle with the Equal Employment Opportunity Commission Charge No. 550-2010-01245, and that no such action or proceeding is contemplated.

  **I HEREBY FURTHER CERTIFY** that, to the best of my knowledge, no other party should be joined in this action.

      **SAIBER LLC**
      Attorneys for Plaintiff
      Kim C. Townsend


      By:  /s/ DanaLynn T. Colao
        DANALYNN T. COLAO, ESQ.

Dated:  January 31, 2011